603 A.2d 145

WASTE DISPOSAL, INC., A NEW JERSEY CORPORATION, PLAINTIFF, v. MONMOUTH COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT.

Superior Court of New Jersey
Law Division Monmouth County

Decided August 12, 1991.

*Richard T. O'Connor* for defendant.

*Gary S. Rosensweig* for plaintiff (*Schwartz, Tobia & Stanziale*, attorneys; *William A. Baker* on the brief).

McGANN, J.S.C.

By way of this action in lieu of prerogative writs, Waste Disposal, Inc. ("WDI") challenges the action of the Monmouth County Board of Chosen Freeholders in amending the Monmouth County solid waste management plan. The effect of the amendment is the removal of the WDI facility from that plan [1] thereby depriving plaintiff of the economic benefits of continued use of its landfill in Howell Township.

The facts are not in dispute. It is the validity of the adoption of the amendment which is at issue. Both sides move for summary judgment.

### The Historic Perspective.

WDI's solid waste disposal landfill began operating in 1946. At that time Howell Township was a rural community. There were no state regulations governing landfill (*i.e.*, garbage dump) operations and few, if any, municipal regulations. The entire WDI property contained 246 acres. WDI determined where the garbage would be dumped. The Muddy Ford Brook meanders through the tract; the Sandy Hill Brook forms its boundary on one side. The waters of both eventually find their way into the Metedeconk River. The Kirkwood–Cohansey Aquifer lies under ground below the landfill.

---

[1] If that action stands, the sole remaining landfill operation for all of Monmouth County's solid waste is the Monmouth County Reclamation Center (landfill) in the Borough of Tinton Falls.

In 1975, the New Jersey Solid Waste Management Act was adopted. (*N.J.S.A.* 13:1E–1 *et seq.*) Its purpose was to improve solid waste disposal operations and monitor their environmental impact through the issuance of state permits based on compliance with regulations. On February 25, 1976, the WDI facility received a certificate of public convenience and necessity from the Board of Public Utilities ("BPU"), which authorized the facility to engage in the business of solid waste disposal as a public utility. On June 30, 1976, WDI was issued its initial New Jersey Department of Environmental Protection (DEP) certificate of registration approving its engineering design and operations. Seventy-seven of the 246 acres received a landfill permit. The balance of the site was used as a buffer zone and "borrow" area.

In May 1981, during the period that WDI was owned and operated by SCA Services of N.J., Inc., SCA voluntarily entered into an administrative consent order ("ACO") with the DEP under the terms of which the SCA agreed to make improvements at the landfill to conduct environmental analyses and to limit its operations to acres already filled. That order contained no admission of liability nor any finding of violations. It arose, however, because of local complaints about the landfill operation. By that time Howell Township had undergone a metamorphosis into a largely residential community. Civilization was coming closer to the landfill.

In October 1982, a second, more comprehensive ACO was entered into by WDI, the DEP and Howell Township. This order also was signed without any admission of liability or finding of violations. Under the order, SCA was obligated to, *inter alia*, design, construct and install a clay cap and liner system for the working face of the landfill as well as a 1700–foot cut-off slurry wall underneath the surface, well points, a groundwater pumping system and a six-inch force main and gravity sewer connected to the Ocean County Utilities Authority plant to dispose of contaminated runoff.

In December 1982, the WDI facility was issued a revised certificate of approved registration and engineering design by DEP.

Pursuant to *N.J.S.A.* 13:1E–24, the Monmouth County Board of Freeholders adopted a solid waste management plan for the county by resolution dated December 1983. The WDI facility was included as part of that original plan and continued to be included in that plan as amended in May 1984, March 1985, April 1986 and August 1986, despite the fact that the WDI landfill was not operating during any of that time. Under the plan, and had it been operating, plaintiff's landfill would have been receiving all of the solid waste from ten specified municipalities plus part of another. Under its BPU franchise, once the WDI landfill reached its approved capacity it could no longer receive solid waste and would be closed in accordance with DEP closure requirements. Since the county was planning for construction of a resource recovery facility (combining recycling and incineration), the BPU franchise would terminate—even if capacity were still available—once the resource recovery facility was opened.[2]

However, in November 1983, SCA, (the then owner of WDI), upon notice to the BPU and DEP voluntarily suspended acceptance of solid waste at the site in order to install the clay lined disposal areas for the landfill in accordance with the October 1982 administrative consent order. The suspension was caused by its inability to obtain required governmental permits to do so as well as the shortage of available clay at that time. Since November 23, 1983, the county landfill has received all solid

---

[2]The opening date of such facility cannot be before 1996. Even that date is speculative since the planned incinerator, a key element, has generated much public opposition causing the freeholders to place an advisory question on the November 1991 ballot as to whether they should proceed with the planned incinerator. They have publicly stated that they would follow the electorate's wishes in that regard.

waste generated from within Monmouth County. All other private landfills have permanently ceased operation.

In August 1984, Monmouth County, by means of an amendment to the county solid waste management plan, attempted to redirect flow of solid waste from WDI to the county-operated reclamation center then under expansion. In its January 1985, certification of the county plan, DEP rejected this attempt to redirect waste flow away from WDI; reaffirmed WDI's inclusion in the county solid waste plan and its continuing right to a ten-and-a-half town waste flow upon the facility's reopening.

In 1984, Waste Management of North America, Inc. acquired SCA and undertook to complete SCA's obligations at the WDI site under the October 1982 administrative consent order. Because of its delay in meeting various deadlines contained in that order, an action was commenced in the Superior Court by Howell Township and its board of health against WDI and by the DEP against both WDI and its predecessor, SCA. That action ended with the entry of a consent judgment with no admission of fault by defendants. That judgment, dated August 20, 1984, extended some of the deadlines for corrective action contained in the October 1982 ACO; fixed added penalties for noncompliance and added the full contempt power of the court to insure effectuation of the administrative consent order.

During 1984–1986, Waste Management began construction on many of the improvements at the WDI facility. Considerable delays, however, arose due to the difficulties in obtaining various permits including a permit necessary to withdraw the groundwater by means of the facilities of the Municipal Utilities Authority of Howell Township. That system was completed and has been operational since May 1988.

Finally, on March 25, 1987, having obtained the necessary permits and anticipating the completion of the required improvements to the facility, Waste Management wrote DEP requesting: (1) recognition of the existence of approximately

918,000 cubic yards of remaining disposal capacity at the land-fill; and (2) an extension of the WDI facility's present certifi-cate of approved registration. Under paragraph 19 of the existing 1982 registration, WDI had the right to request an extension as long as disposal capacity remained. The Assistant Chief, Bureau of Solid Waste Facility Review at DEP, wrote back acknowledging the existence of remaining capacity for waste disposal and conditioning extension of WDI registration upon the submission of a state-of-the-art engineering design.

In a letter to Waste Management, dated August 22, 1988, Larry Zaayenga, the Monmouth County Solid Waste Coordina-tor for the past 14 years, stated that "(t)he Waste Disposal Landfill does still have a place in our County Solid Waste Plan." Zaayenga went on to state that "(s)hould this landfill re-open, the ten towns previously using the site now using the Reclama-tion Center as a 'back-up' facility, would be redirected to WDI"; and that "(t)he re-opening of WDI would undoubtedly offer some relief for our men and equipment, and extend the useful life of our permitted site by 6 months to a year."

In an April 13, 1989 letter to Waste Management, Zaayenga (at the request of the county administrator) set out three possible alternative solid waste flow scenarios for the reopen-ing of the WDI facility.

Thereafter, Waste Management submitted an updated engi-neering design to DEP in May 1989 and applied to use the remaining capacity of the landfill. That capacity is limited to an area of 17 acres to be constructed on top of part of the old compacted 77–acre landfill. The design capacity allows receipt of 935,500 cubic yards or approximately 600,000 tons of solid waste. DEP reviewed the submission and over the next several months, sought additional information. Neither the county nor Howell Township, although provided copies of all correspon-dence, offered any comments or objections to the submitted engineering design or any reports submitted therewith. By early 1990, the DEP appeared satisfied that WDI's submission

complied with DEP environmental technical requirements. There have been no further requests from DEP for supplementation of that submission. The permit is awaiting DEP's formal approval. Under *N.J.A.C.* 7:26–2.4(g), notice to both Howell Township and Monmouth County is required subject to their right to review all documents as well as the right to a public hearing under *N.J.A.C.* 7:26–2.5.

Meanwhile, in August 1989, the BPU issued an order awarding a solid waste disposal franchise to Monmouth County. That order recognized that the WDI facility was included in the county's solid waste management plan along with the county reclamation center and reaffirmed WDI's entitlement to receive waste flow from the 11 Monmouth County municipalities that had been directed to it under existing flow regulations, upon DEP's allowing it to become operational once again. The BPU recognized that the existing flow allocation for WDI would remain in effect until the start-up of the county's planned resource recovery facility, which at that time was projected to become operational in 1994.

In November and December 1989 with the reality of the probable early DEP approval of the required site-work at the WDI facility and reopening of the same, a series of meetings took place between representatives of WDI, Monmouth County and Howell Township. At these meetings, the county and township set forth their respective concerns with regard to the reopening and suggested requirements that should be imposed on WDI as conditions of the landfill's reopening. On each occasion, Waste Management indicated its willingness to abide by the conditions suggested.

The county's concerns centered upon the issues of routing of trucks going to and from the facility as well as its economic impact on the county reclamation center. In addition to the traffic issue, Howell Township's concerns were focused upon fear of possible environmental problems and local land-use issues in the surrounding area.

With respect to the issues concerning traffic flows, Waste Management had addressed that subject at length in volume 5, section 4 of its six-volume engineering design submission to DEP. WDI's traffic consultant concluded that the traffic would not adversely affect the operating levels of traffic at affected intersections. A further meeting between the county and Waste Management took place on January 5, 1990 at which time the county made specific requests regarding funding for bridge and road improvements. An acceptable solution to the county's traffic routing concerns was reached. Waste Management agreed to the county's recommendation as to a specific access routing for the facility and the proposed road and bridge improvements which the county found were necessary.

With respect to the issue of WDI's impact on the county disposal facility, Zaayenga, the county's solid waste coordinator, repeatedly asserted that such an impact would be beneficial. For example, in his November 29, 1989 memo to the Solid Waste Advisory Council ("SWAC"), Zaayenga stated that "it could benefit the County to reduce the quantity of waste coming to the County Reclamation Center until such time as additional Phase III landfill capacity and resource recovery come on-line...." He reiterated that position in his December 21, 1989 memo to the county administrator and others, stating that "(w)e need this facility to offer some relief to the Reclamation Center...." Additionally, at the December 7, 1989 SWAC meeting, Zaayenga expressed his concern that some unanticipated delay in the expansion of the county landfill "might result in a 'tight situation' for capacity in the period 1991–1993. WDI's operation would offer 'extra breathing space.'" Finally, in the "Major Findings" section of the January 1990 staff report to SWAC issued by Zaayenga, the statement appears that "there would appear to be both a beneficial impact to the Monmouth County Reclamation Center as well as to the rate-payers using that facility should WMI [*sic*] Landfill reopen."

With respect to the environmental concerns raised by Howell Township, Waste Management's May 1989 submission to DEP

also dealt at great length with every conceivable environmental improvement that had been completed and/or implemented at the landfill or was required to be installed as part of the construction of the 17–acre disposal site. Zaayenga confirms the county's knowledge of the completion of landfill improvements and installation of the groundwater pumping system in the January 1990 staff report. He further stated in a January 19, 1990 memo addressed to "Municipal Officials and Public Works Directors" that "the present owners of the former 'WDI Landfill' in Howell Township have completed the clean-up work required in response to pollution problems at that facility." Moreover, on February 19, 1990, in response to the January 25, 1990 letter from Howell Township Mayor Michael Ferguson, a Waste Management environmental engineer addressed each of the concerns raised, noting that "based on the most recent (1989) well monitoring data, none of the parameters required to be monitored exhibited levels above state or federal drinking water standards." In addition, the engineer also noted that "the Howell Township Municipal Utilities Authority ... receives all ground and surface water monitoring data." Additionally, by letter of February 23, 1990, Waste Management responded to Zaayenga's informational requests regarding surface and groundwater quality at the site by providing a complete history of all monitoring data for the site. No adverse comments by the county or township were ever submitted to DEP or WDI regarding this information, nor was the accuracy of this information questioned.

With respect to any local land use issues, the most repeated concern of Howell representatives was the impact the reopened facility might have on a proposed church and school that were planned to be built within a mile or so of the facility's property line. Yet, in his January 1990 report, Zaayenga points out that under at least two of the three alternate waste flow scenarios proposed, the WDI landfill would reach capacity and close down operations prior to the completed construction of either the school and the church. Moreover, this estimate was made even

without assuming any normal and customary delays attendant either to the permit or construction process. (Voter approval has yet to be received for the school construction project.)

On January 18 and February 15, 1990, public meetings of the Monmouth County SWAC took place. At both of these public meetings Howell Township organized and mobilized a large turnout of local residents opposed to the reopening of the WDI facility. While the opponents of the reopening from Howell were vocal in their opposition to the reopening, no expert testimony or competent documented evidence in support of their position was offered at either of those meetings.

Between those two meetings of the SWAC and on February 8, 1990, the board of chosen freeholders held a nonpublic work session meeting at which WDI's status in a proposed amendment to the county solid waste management plan was discussed. The chairman of the Howell Township citizen's group was present at this meeting and urged the freeholders not to include WDI in the proposed amendment. At the outset of the discussion, Freeholders Powers and Narozanick clearly indicated that they had decided to support the removal of WDI from the county plan. By the close of this work session, it was quite clear that a consensus had been reached among the freeholders to delete the WDI facility from the plan. At the February 8, 1990 public meeting of the freeholders held immediately thereafter, Harry Larrison, Jr., the Director of the Board of Chosen Freeholders, stated "I'm looking forward to seeing all of you [at the scheduled meeting] on March 8th...where we will vote to take WMI [sic] out of the Monmouth County Solid Waste Management Plan." Freeholder Handlin stated "you have all heard what stance we want to take...(I)t is an open and shut case." No expert testimony, or evidence or report was offered at the February 8 board session supporting the deletion of WDI, other than the information previously submitted upon which Zaayenga concluded in his January 1990 report that the WDI facility should remain in the county plan and be reopened.

A week later, at another freeholder work session meeting held immediately prior to the February 15 SWAC meeting, the freeholders reviewed and discussed the proposed plan amendment and formally directed Zaayenga to prepare a plan amendment deleting WDI from the county plan. In doing so the board acted contrary to its usual procedure of first seeking the SWAC's review and its issuance of a formal recommendation on the adoption of any plan amendment prior to the freeholders taking formal action.

The proposed plan amendment cited, as reasons for the removal of WDI, environmental and local land use concerns as well as the impact of its reopening upon dumping fees in the contemplated service area, despite the fact that the January 1990 staff report had addressed each of those issues and concluded that a satisfactory resolution of each such concern had been (or could be) reached. As of the February 15, 1990 freeholder work session meeting, no new information bearing upon those concerns had come to the attention of the SWAC or board.

Later in the evening of February 15, 1990, the SWAC held a public meeting to "decide" upon the proposed plan amendment's deletion of WDI. After some members and attendees expressed doubt as to why any formal SWAC action was even necessary given the freeholders clearly stated intention, the SWAC nonetheless voted to recommend WDI's removal from the plan. No expert testimony or other evidence was offered at that meeting.

On February 9, 1990, WDI as a public utility, filed a rate application with the BPU seeking approval of rates for the reopened 17–acre landfill area. The County of Monmouth is a party to that filing [3].

---

[3]On January 14, 1991, the DEP approved WDI's 30–year closure and post-closure plan for the existing landfill, citing the facility's permit number (1319B) and establishing environmental and other surface and groundwater

On March 8, 1990, immediately at the conclusion of the scheduled hearing before the board of chosen freeholders on the adoption of the plan amendment, the freeholders, in resolution 90–195 adopted the proposed plan amendment which, *inter alia* removed the WDI facility from the county plan. No expert testimony was introduced and no other evidence containing analytical data, detailed study, professional analysis, *etc.*, was placed on the record to support that action. WDI did introduce at that meeting documented objections to the proposed plan amendment containing technical data, analyses and studies dealing directly with the environmental concerns raised by the supporters of the amended plan. Counsel for WDI was allowed to make oral argument against the amendment. The board of freeholders did not pause to have the technical data analyzed by its experts. No technical data was placed before the board by the supporters of the amendment. As soon as the public portion of the meeting was closed, the five-member board unanimously adopted resolution 90–195 (prepared in advance of the meeting) and approved the amended Plan eliminating the WDI landfill. The text of the resolution[4] follows:

RESOLUTION AMENDING THE MONMOUTH COUNTY
SOLID WASTE MANAGEMENT PLAN TO

(1) INCLUDE CERTAIN INFORMATION REGARDING
THE PROPOSED RESOURCE RECOVERY FACILITY
IN THE BOROUGH OF TINTON FALLS, AND

(2) REMOVAL OF THE WASTE DISPOSAL, INC.,
LANDFILL IN HOWELL TOWNSHIP FROM
THE PLAN

Freeholder POWERS offered the following resolution and moved its adoption:

---

monitoring requirements. This plan also includes and requires a $20 million financial assurance to guarantee compliance with DEP requirements.

[4] The resolution makes two amendments to the county solid waste management plan. Only the second, that which removes the WDI landfill from the plan, is at issue here.

WHEREAS, the New Jersey Solid Waste Management Act (the "Act"), *N.J.S.A.* 13:1E–1 *et seq.*, provides the legislative framework for the development, adoption and implementation of a long term solid waste management plan (the "Plan") for each county in the State; and

WHEREAS, pursuant to the provisions of the ACT, Monmouth County prepared amendments to its Plan concerning the development of the proposed resource recovery facility in the Borough of Tinton Falls and the proposed reopening of the Waste Disposal, Inc., Landfill (WDI) in Howell Township; and

WHEREAS, copies of this Amendment were forwarded by certified mail to all affected municipalities in the County on February 23, 1980, as well as to other interested parties, accompanied by notice of a public hearing, said notices also advertised twice in a newspaper of general circulation within the County on February 22 and 26, 1990; and

WHEREAS, the Board of Chosen Freeholders of the County of Monmouth held a public hearing regarding said Amendments on March 8, 1990 at the Ramtown School in Howell Township, N.J.; and

WHEREAS, the Amendments contain technical and financial information regarding the development of the county's resource recovery facility in Tinton Falls; and

WHEREAS, the Amendment also specifies the removal of the WDI Landfill in Howell Township from the Plan; and

WHEREAS, the present owner of the landfill, Waste Management, Inc., has made application to the New Jersey Department of Environmental Protection for permission to reopen the portion of the WDI Landfill which was subject to a consent order with NJDEP in 1982; and

WHEREAS, two public hearings were held before the Monmouth County Solid Waste Advisory Council (SWAC) on January 18, 1990 and February 15, 1990; and

WHEREAS, there was considerable "public input" from residents and officials from Howell Township and other affected communities, at the SWAC hearings as well as the public hearing before the Board of Chosen Freeholders; and

WHEREAS, these comments have addressed the radically different community in the area adjacent to the landfill since its closing in 1982 in terms of subsequent development of homes, schools, churches and commercial establishments; and

WHEREAS, it is apparent from this development that a new landfill for solid waste is not compatible with this new development; and

WHEREAS, there are serious concerns regarding the status of compliance by the current owner of the landfill regarding all requirements of the 1982 Consent Order; and

WHEREAS, there are "concerns" over the impact of the landfill on the quality of surface and underground water, especially the acquifer which is the primary drinking water supply for thousands of residents in Monmouth and Ocean Counties; and

WHEREAS, the Board of Chosen Freeholders considers the reopening of the WDI Landfill a serious environmental harm and firmly believes that it should stay closed and monitored closely; and

WHEREAS, the County of Monmouth is prepared to seek permanent closure of the landfill and is prepared to address this concern in every forum; and.

WHEREAS, the SWAC has recommended this course of action.

NOW, THEREFORE, BE IT RESOLVED by the Monmouth County Board of Chosen Freeholders that the Amendments to the County Solid Waste Management Plan concerning the resource recovery facility in Tinton Falls and the removal of the WDI Landfill in Howell Township are approved and adopted with the exception of language contained in the Plan starting on Page # 18 with *REQUIREMENTS IMPOSED BY COUNTY IF DEP PERMITS REOPENING* and terminating at the end of Page # 27.

BE IT FURTHER RESOLVED that copies of this resolution and Amendment shall be forwarded to the New Jersey Department of Environmental Protection and the New Jersey Board of Public Utilities.

Seconded by Freeholder NAROZANICK and adopted on roll call by the following vote:.

|  | AFFIRMATIVE | NEGATIVE | ABSENT | ABSTAINED |
|---|---|---|---|---|
| MR. STOPPIELLO | (X) | ( ) | ( ) | ( ) |
| MRS. HANDLIN | (X) | ( ) | ( ) | ( ) |
| MR. NAROZANICK | (X) | ( ) | ( ) | ( ) |
| MR. POWERS | (X) | ( ) | ( ) | ( ) |
| MR. LARRISON | (X) | ( ) | ( ) | ( ) |

### The Applicable Law.

By virtue of the amended Solid Waste Management Act in 1975, the Legislature placed responsibility for coordination of, and control over, solid waste collection and disposal throughout the State with the Department of Environmental Protection. *N.J.S.A.* 13:1E–1 through –24. Its broad powers and duties are set forth in *N.J.S.A.* 13:1E–6 and –9. To advise and assist DEP the Advisory Council on Solid Waste Management was created. *N.J.S.A.* 13:1E–7. In furtherance of the legislative scheme, each county is designated a "solid waste management district" (*N.J.S.A.* 13:1E–19) with the obligation of developing its own solid waste management plan. To advise and assist each county board of freeholders in performing that task, an advisory solid waste council for each county is mandated. *N.J.S.A.* 13:1E–20.

Requirements for the district solid waste management plan are specified in *N.J.S.A.* 13:1E–21. The plan (and any subsequent amendments) must be submitted to the Commissioner of DEP together with all supporting documentation. The commissioner then has complete power to approve, reject or modify the district plan. *N.J.S.A.* 13:1E–24.

Noteworthy in that process is *N.J.S.A.* 13:1E–23(f) which provides in pertinent part:

> Any person who shall have filed ... a written objection with the board of chosen freeholders ... may have *the adoption* of a solid waste management plan reviewed by the Superior Court of New Jersey, by procedure in lieu of prerogative writs...In any such action the court may make any incidental order that shall be deemed by the Court to be proper. [Emphasis supplied]

This action seeks that review.

*N.J.S.A.* 13:1E–23(e) contains this language:

> ...The adoption of all or a part of a solid waste management plan, *if supported by substantial evidence*, shall be binding and conclusive upon all persons affected by the adoption.... [Emphasis supplied]

Keeping that legislative language in mind, the precise issue is whether there was substantial evidence upon which the board of chosen freeholders based its decision to amend the district solid waste management plan to eliminate the WDI landfill. There can be no question of WDI's standing to institute this action and that this court has jurisdiction. Should the court rule that the action was not supported by substantial evidence, the freeholders would have to begin anew. If the court rules that the action was supported by substantial evidence then status of the amended district plan depends on the commissioner's review under *N.J.S.A.* 13:1E–24.[5]

---

[5] In fact the amended plan has been reviewed. The commissioner neither approved nor rejected it in whole or in part. Instead the commissioner remanded it on August 24, 1990 for reconsideration in light of the Governor's executive order of April 6, 1990 prohibiting approval of any resource recovery facility (part I of the amended county plan) pending issuance of the final report of the Emergency Solid Waste Assessment Task Force. That report was issued on August 6, 1990. Based on it the commission found that the amended plan of Monmouth County was potentially inconsistent with the statewide solid

## Conclusion.

The factual recitation, above, of the manner in which the board of chosen freeholders acted—particularly from February 8, 1990 through March 8, 1990 [6] as well as analysis of the resolution which it adopted lead, ineluctably, to the conclusion that the amended district solid waste management plan was not supported by substantial evidence. In fact its adoption was arbitrary, political and unreasonable—the antithesis of the requisite "substantial evidence" standard.

It is abundantly clear that no later than their February 8, 1990 work session meeting, the freeholders were unanimous in agreeing that the WDI landfill would be removed from the solid waste management plan. They determined to do so before the SWAC held its scheduled February 15, 1990 meeting at which it was to vote on its recommendation on the proposed amended plan. They determined to do so before the public hearing which they scheduled for March 8, 1990—a hearing which, with freeholder encouragement, turned into a pep rally for removal of the WDI site and at which the WDI attorney caused embarrassment by making the point that the freeholders were ready to vote without listening to his opposition to the amendment. There was immediate and obvious political capital in the move. If the resource recovery plan (recycling plus incineration)—part I of the proposed amended plan—were to be approved by the Commissioner of DEP and expeditiously put in place, the existing county landfill had sufficient capacity to accept all of the

---

waste management plan both in eliminating the WDI landfill as well as in its waste-to-energy (incinerator) resource recovery facility. On remand the county was instructed to reconsider for possible modification to be consistent with recommendations in the task force report. The effect of the remand is to leave the status of the Monmouth County solid waste management plan as it was prior to the amendment—with the WDI landfill still included. The county has appealed that action to the Appellate Division. That appeal is still pending.

[6]Minutes and verbatim transcripts of all referenced meetings of the SWAC and board of freeholders were marked as exhibits and were read by the court.

county's solid waste. But if that amendment were rejected, the county would face a serious shortage of landfill space if it did not have the "safety-valve" provided by that of WDI. In such event the DEP would necessarily have to reject part II—the elimination of WDI. The local political benefit would remain the same in either case—the retention of WDI in the county's plan would be the fault of the DEP not the freeholders. They would retain local good will and also have the WDI landfill to fall back on.

A close reading of the resolution adopted March 8, 1990 indicates how shallow in substance it is. The reasons given for eliminating the WDI landfill may be summarized as follows:

1. The "public input" highlighted the fact that, since 1982, there had been "subsequent development of homes, schools, churches and commercial establishments." The statement is an exaggeration. The transcripts of the public meetings of SWAC and of the board of freeholders support the fact that there had been some development of homes in the area of the landfill. Neither school nor church had advanced beyond the planning stages. There was no proof of "commercial establishments" of any significance.

2. "It is apparent...that a new landfill for solid waste is not compatible with the new development." WDI is an existing, not a new, landfill. There is no reference to scientific information or opinion evidencing such incompatibility. Every landfill is incompatible in the sense in which the freeholders use that word.

3. "There are serious concerns regarding the status of compliance by the current owner ... regarding all requirements of the 1982 consent order." The freeholders can point to no evidence supporting "concerns." As public officials, they knew that the DEP—charged with the responsibility of insuring technical compliance, had approved WDI's compliance with the 1982 administrative consent order and 1984 consent judgment.

4. "There are concerns over the impact of the landfill on the quality of surface and underground water...." There was no evidence to support the concerns. The principal thrust of the 1982 ACO and 1984 consent judgment was protection of surface and underground water supplies. That had been accomplished by compliance with DEP requirements.

5. "The Board of Chosen Freeholders considers the reopening of the WDI landfill a serious environmental harm." The board had no factual proof upon which to reach that conclusion.

6. "The SWAC has recommended this course of action." That statement is not true. As the transcript of the SWAC hearings reflect, the advisory council supported part I of the amended plan but was hesitant about eliminating the WDI landfill. The plan amendment as drafted by Zaayenga contained a fall-back position. It provided that if the commissioner should reject the elimination of WDI, then he would also have before him the option of retaining WDI but with all the conditions regarding traffic routing and control and improvements to be made by WDI to local roads. It was that plan which the SWAC recommended.

Therefore, not supported by substantial evidence, the amended solid waste management plan adopted on March 8, 1990, insofar as it eliminated the WDI landfill from the plan, was invalid. Judgment to that effect shall be submitted by counsel for WDI. WDI's alternate claim for a "taking" of its property without just compensation is mooted by this decision.